UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80743-CIV-RYSKAMP/Vitunac

GARY GRANOFF,

    Plaintiff,

v.

CLARENDON NATIONAL INSURANCE
COMPANY, a foreign corporation,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

THIS CAUSE comes before the Court upon Defendant's motion to dismiss complaint **[DE 3, 8]**, filed on August 23, 2007.  Plaintiff responded **[DE 15, 17]** on September 20, 2006.  On September 28, 2006, Plaintiff replied **[DE 18]**.  The motion is ripe for adjudication.

**I.**    **Introduction**

This is an action brought under this Court's diversity jurisdiction.  Plaintiff is a resident of Florida and Defendant is a New York corporation with its principle place of business in New York.  Defendant avers that the amount in controversy exceeds $75,000.  (Removal at 2, Compl. at ¶ 1).  At issue is whether Defendant breached a commission agreement, and if not, whether Plaintiff is still entitled to damages under the theory of quantum meruit.

Plaintiff alleges that he has worked in the Insurance business in Florida for twenty nine years.  He has held positions such as the Chief Actuary for the State of Florida and has acted as a consultant for private industry.  (Compl at ¶ 5).  As a consultant, Plaintiff worked with Jon Shebel and Robert Ferguson to help form what later became known as Associated Industries Insurance Company

(AIIC). (Compl at ¶ 6). Shebel became the President of AIIC and Ferguson left AIIC to become the President of Clarendon Insurance Group (CIG), Defendant's parent company. (Compl at ¶¶ 7-8).

Plaintiff alleges that in 1991, CIG, via Ferguson, hired him as a consultant. (Compl at ¶ 9). During this time, Plaintiff also worked with the President of Defendant, Christopher Foy. (Compl at ¶ 10). Defendant writes worker's compensation insurance and then "cedes" the premiums to reinsurers who assume the risk and most of the premiums; Defendant retains a small amount of the premiums. (Compl at ¶¶ 10-11).

In 1999, Plaintiff alleges that Defendant hired him as a consultant to assist in a transaction with another insurance agency. This was a successful transaction. Plaintiff received one percent of the value of the "direct written premium" of the business assumed as his consultation fee. (Compl at ¶ 12).

That same year, Hannover Re bought CIG and its subsidiaries. (Compl at ¶ 13). Hannover Re replaced Plaintiff in his capacity as the reserving actuary in 2000 but Plaintiff continued to consult for Defendant. (Compl at ¶¶ 14-15). Specifically at issue in this case is a business transaction that Plaintiff discovered in 2001 involving AIIC and Professional Insurance underwriters (PIU). The PIU transaction never came to fruition, but Plaintiff alleges that he was able to arrange a deal between Defendant and AIIC. (Compl at ¶¶ 16, 19-20).

Plaintiff alleges that he entered into a written consulting agreement with Foy regarding the AIIC deal. (Compl at ¶ 17-18). The agreement, entered into on April 16, 2001, provided that if a deal occurred between Defendant or its affiliated entities and AIIC, then Defendant would pay Plaintiff a consulting fee of one percent of the direct written premium collected for three years after the effective date of the transaction. (Compl at ¶¶ 18, 24).

AIIC was in trouble with Florida insurance regulators because its balance sheets reflected too much risk in relation to the amount of premiums collected. (Compl at ¶ 21). Plaintiff was to act as a consultant and to attempt to coordinate a deal in accord with the consulting agreement. (Compl at ¶¶ 23-24).

Plaintiff arranged a meeting between AIIC, Defendant, and AIIC's reinsurance broker, John Sayer. (Compl at ¶ 25). Although no agreement was reached at that time, Plaintiff alleges that he advised Defendant to wait because he believed that AIIC's situation would worsen. (Compl at ¶¶ 26-27).

Plaintiff continued to monitor AIIC's situation and by Fall of 2003, it had worsened; the State gave AIIC until January 1, 2004 to resolve its problems. (Compl at ¶¶ 28-31). Plaintiff alleges that he contacted Foy to explain the situation and to began developing proposals which he sent to both parties. (Compl at ¶¶ 32-34). In January 2004, Defendant and AIIC reached an agreement where Hannover Re would assume the policies instead of Defendant. (Compl at ¶ 35). In 2004, AIIC ceded $76,000,000 of direct written premiums to Hannover Re and it ceded between $4,000,000 and $15,000,000 in 2005.

Plaintiff argues that he is owed one percent of the value of the direct written premium for 2004, 2005 and 2006 (Count I). (Compl at ¶¶ 38-43). He also argues that if the consulting agreement does not apply to the AIIC transaction, that he is entitled to a reasonable value for his services, one percent of the direct written premium for 2004, 2005 and 2006, in *quantum meruit* because he was instrumental in arranging the deal between the parties (Count II). (Compl at ¶¶ 44-46).

Defendant now moves this Court to dismiss Plaintiff's Complaint **[DE 1]**, on the grounds that

Plaintiff fails to allege: (1) that he was licensed; (2) that Foy had actual or apparent authority to act on Defendant or Hannover Re's behalf for transactions entered into by Hannover Re or its subsidiaries; (3) the alleged contract is not exclusive or definite in time and therefore is not enforceable under Florida law; and (4) that Plaintiff was not the procuring cause of the transaction.

## II.  Discussion

### A.  Standard on Motions to Dismiss

A court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004). In general, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995)

(quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F. Supp. 2d at 1359.

### B. Proper Licensing

Defendant argues that to enforce the alleged contract, Plaintiff must have been licensed to sell insurance or to broker a business deal between AIIC and Defendant. As such, the compliant must be dismissed because Plaintiff failed to allege that he was licensed. Defendant relies on four types of required licences to support its motion: (1) general lines *agent*; reinsurance intermediary *broker*; reinsurance intermediary *manager*; or a business *broker*. Fla. Stat. §§ 626.7315, 626.7492(f)-(g); and 475.41 (emphasis added). In order for these licensing statutes to apply, Plaintiff must have acted as either a agent, broker, or manager.

A general lines agent is one who transacts worker's compensation insurance. A license is required if one:

(1) solicits or obtains applications for insurance,

(2) issues an insurance receipt for money,

(3) represents himself to be an insurance agent,

(4) represents that he abstracts or analyses insurance policies,

(5) causes an insurance policy to be issued,

(6) effects insurance contracts as a member of a corporation that has an agency appointment from any insurer, or

(7) handles suretyship applications.

The facts do not indicate that Plaintiff has engaged in any of these activities. In any event, Defendant

has failed to show that Plaintiff was required to be licensed for his role in the agreement reached between them and AIIC.

A reinsurance intermediary broker is one who is not an employee of the ceding insurer who acts on behalf of the ceding insurer without authority to bind reinsurance on their behalf. A reinsurance manager is one who acts as an agent of the reinsurer and manages the assumed reinsurance business of a reinsurer. Fla. Stat. § 626.7492(f)-(g). The facts, as alleged, show that Plaintiff acted on behalf of the assuming insurer, not the ceding insurer and that Plaintiff never managed the assumed business. Thus, since the complaint already makes clear that these licensing statutes do not apply, the motion to dismiss is denied.

Finally, Defendant argues that this transaction involved the sale of a business opportunity and as a result, Plaintiff should have been licensed as a business broker. A broker is one who sells or offers business opportunities, business enterprises, or real property, for another for payment. Although the term business opportunity is not defined in the context of insurance licensure, the term is defined in the Sale of Business Opportunities Act. §§ 559.80 - 559.815. In that statute, a business opportunity is defined as "the sale or lease of any products, equipment, supplies, or services [that enable] a purchaser to start a business for which the purchaser is required to pay an initial fee or sum of money which exceeds $500 to the seller[.]" There are also additional requirements placed on the seller such as continued assistance to the purchaser, obligations to buy products made by the purchaser and a guarantee that the purchaser will derive income from the business. Fla. Stat. § 559.801. Thus, it appears that § 475.01 is designed to require a broker to obtain a license where he is involved in the sale of a business as a whole, a business opportunity, or real estate. Defendant relies on *Meteor Motors, Inc. V. Thompson Halbach & Associates*, 914 So.2d 479, which concerned

the sale of a automobile dealership (an entire business).  Reliance on that case is misplaced since this transaction does not implicate the business broker licensing statute.  Therefore, from the face of the complaint, Plaintiff is able to forward facts to argue that he is not required to obtain a license for this transaction.

Thus, it does not appear from the record at this time that the complaint is deficient on its face.  It appears that the licensing statutes the Defendant cites do not apply.  And, at the very least, whether or not the statutes apply is an inquiry more appropriate in a later motion to this Court.  As it stands, the complaint makes sufficient allegations to withstand the motion to dismiss.

### C. Foy's Authority

Defendant argues that Plaintiff has failed to allege that Foy, Defendant's vice-president, had the actual or apparent authority to bind it to the contract since the transaction occurred between AIIC and Defendant's parent corporation.  Actual authority exists when a principal gives an agent the authority to act on its behalf.  Actual authority also exists when the agent reasonably believes that the principal has bestowed him with the power to bind the principal.  The authority can be expressly or impliedly conferred.  Apparent authority exists when a third party deals with a principal and based on those dealings reasonably believes that the agent has the power to bind the principal.  To establish actual agency, the principal must have acknowledged that the agent acts on its behalf, the agent must have accepted, and the principal must have controlled the agent's actions.  *Fernandez v. Florida Nat. College, Inc.*, 925 So.2d 1096, 1101 (Fla 3rd DCA 2006).

Apparent authority exists only where there is a representation by the principal, third party reliance on that representation, and where the third party changes its position because of the representation.  *Roessler v. Novak*, 858 So.2d 1158, 1161-62 (Fla. 2nd DCA 2003).  Thus, apparent

7

authority is created where the principal wrongly allows "an agent to assume or [when] the principal by his actions or words hold the agent out as possessing." *Security Union Title Ins. Co. v. Citibank, Fla.*, 715 So.2d 973, 974 (Fla. 1st DCA 1998).

The complaint alleges that Foy signed the contract as Defendant's Senior Vice President and that Plaintiff, Foy and Defendant had a history of conducting similar business deals where Defendant paid Plaintiff for his services. These facts taken together can support a claim for either actual or apparent authority since a complaint need not detail every fact that may be relied upon at trial but need only place the Defendant on notice of the claims against him.

### D. Enforceability of the Contract

Defendant argues that the contract cannot be enforced because it took too long to execute the transaction, that the deal must have been completed in 2001 per the contract terms and that Defendant never promised that Plaintiff would serve as the exclusive broker for the deal. The contract, however, does not specifically limit the time for which the deal can take place as the contract states that the Defendant will pay Plaintiff if "a" transaction occurs. Moreover, the complaint specifically alleges that Plaintiff advocated that Defendants wait until AIIC's situation worsened before trying to secure a deal. Defendant, according to the allegations, agreed on that strategy. These are sufficient factual allegations.

### E. Plaintiff as the Procuring Cause

Defendant argues that the Plaintiff failed to allege that he was the procuring cause of the transaction. In order for the procuring cause doctrine to apply, Plaintiff must have been acting as a broker. Plaintiff, however, alleges that he was not a broker but rather a consultant or finder. If, however, Plaintiff were acting as a broker, he would have to be the procuring cause of the transaction

in order to collect a commission.  In order to be a procuring cause, the Plaintiff must have done more than introduce the parties to each other.  He must have also made continuous efforts to promote the transaction.  *Osheroff v. Rauch Weaver Millsaps & Co.*, 882 So.2d 503, 505 (Fla 4th DCA 2004).  The complaint alleges sufficient facts to show that he did continue to promote the transaction by monitoring AIIC's balance sheets, contacting both parties, continuing to investigate the requirements that the Florida Department of Insurance imposed on AIIC such as the January 1, 2004 deadline to fix the balance sheets, and writing proposals and devising scenarios to help the parties reach an agreement.

**III.   Conclusion**

The Court has carefully reviewed the motion and based on the foregoing reasons, it is hereby,

ORDERED AND ADJUDGED that Defendant's motion to dismiss **[DE 3]** is DENIED AS MOOT.  Defendant's motion to dismiss **[DE 8]** is DENIED.  Accordingly, Defendant's motion for protective order **[DE 4, 9]** is DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 27 day of February, 2007.

　　　　　　　　　　　　　　　　　　　　　　/s/ Kenneth L. Ryskamp
　　　　　　　　　　　　　　　　　　　　　　KENNETH L. RYSKAMP
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record